Debra Rose TURNER, Appellant,

v.

Douglas Arling ROSE, Appellee.

No. 12–88–00143–CV.

Court of Appeals of Texas, Tyler.

April 14, 1989.

Rehearing Denied May 19, 1989.

Robert A. Ray, Tyler, for appellant.

Henry T. Skelton, Kugle, Douglas & Skelton, Athens, for appellee.

COLLEY, Justice.

This is an appeal by Debra Rose Turner (Turner) from a divorce decree entered nunc pro tunc on April 15, 1988.

Turner is the former wife of the appellee, Douglas Arling Rose (Rose). Turner filed a petition for divorce on November 25, 1986. By her petition, she alleged that two sons had been born as issue of the marriage, and that the parties had acquired property and incurred debts during their marriage relationship. Along with other relief, she sought a division of the property. On March 18, 1987, the case was submitted to the trial judge for disposition. The issues regarding the property division were agreed to by the parties, as is reflected by the testimony of both Turner and Rose. Under that testimony, it is undisputed that a certain 77 [1]-acre tract of land located in the Golden Community of Henderson County had been acquired by the parties jointly by gift from Rose's parents as separate property.

On June 1, 1987, the trial court signed a divorce decree which awarded the 77-acre tract to the parties as "tenants in common." On February 25, 1988, the trial court heard and granted Rose's motion for judgment nunc pro tunc. The court found a clerical error in the original decree, and substituted an order that Turner and Rose "shall own the [77-acre tract] as trustees for the benefit of [the children]" in place of the order in the original judgment that Turner and Rose "shall own the [77-acre tract] as tenants in common."

Turner presents five points of error by which she contends that the trial court erred: (1) & (2) in granting the judgment nunc pro tunc because there was no evidence, or insufficient evidence, that the original judgment differed from the judgment nunc pro tunc; (3) in creating the trust in the parties' separate property; (4) in committing the parties' separate property to the trust; and (5) in granting the nunc pro tunc motion because the error corrected was a judicial error and not a clerical error.

At the hearing on March 18, 1987, Turner testified in part as follows:

(Questions by her counsel, the Honorable Robert H. Fields)

Q: Now, on this property, y'all have accumulated some community property that I am going to go over here and I want you to listen and I'm going to ask you whether or not that you have agreed to the division as I am stipulating it to you and asking you about it in court and whether or not you want the court to enter an order dividing it according to what we are talking about now. All right?

A: Yes.

Q: And y'all have some property, I believe, up in Golden concerning seventy-seven acres, I believe, that his parents had given y'all. Is that right?

A: Yes.

Q: And y'all have agreed that that property would be deeded to those two boys. *Actually deeded to you and Mr. Rose in trust for the two boys* so that y'all would act as trustee and administer that trust for the benefit of those two children[?]

A: Right.

Q: Is that all right with you?

A: Absolutely.

Q: In other words, you and Mr. Rose would be divested of any interest y'all had in it and it would belong to those

---

**1.** Described in the original judgment as 75 + acres.

two boys subject to the administration of that trust by you two[?]

A: That's exactly right.

Following Turner's testimony, Rose testified in part as follows:

(Questions by Rose's counsel, the Honorable Henry T. Skelton)

Q: Now, is there anything else? Let's see. You understand the property division as Mr. Fields stated it?

A: Yes, I do.

Q: Any questions about that?

A: No.

Q: You feel like you were pressured in any way to go along with any of this?

A: No.

.    .    .    .    .

Q: Do you feel like you have had enough information to be able to make a decision about your property?

A: Yes.

After the testimony was closed, the trial court, in part, stated:

THE COURT: Okay. The court will grant the divorce and we will ... approve the agreement between the parties as to the division of the *community estate and liabilities.* (Emphasis ours).

The "Final Decree of Divorce" signed on June 1, 1987, contained an order that Turner and Rose "shall own the following described property as tenants in common." A field note description of the 77–acre tract, which was then owned by the parties as separate property, one-half each, immediately followed the last quoted language. Another paragraph followed the description of the 77–acre tract in dispute. That paragraph decreed that each party would be responsible for "one-half (½) of the ad valorem taxes" levied against the property, as well as "one-half (½)" of the premium cost of "any fire or any casualty insurance...." on any improvements thereafter located on the 77–acre tract. Counsel for *both parties* signed the decree to evidence their approval of the proposed decree as to *"form only."* On January 1, 1988, however, seven months after the date on which the divorce decree had been signed, Rose filed a motion for judgment nunc pro tunc. By his motion, Rose asserted that a clerical error existed in the June 1, 1987, decree because that decree failed to incorporate language creating a trust for the children. Turner responded to the motion, alleging that the error "sought to be corrected ... is a judicial error rather than a clerical error...."

The trial court heard Rose's motion on February 25, 1988. At that hearing, Rose called Turner as a witness and introduced Turner's March 18, 1987, testimony which specifically related to the parties' agreement that the 77–acre tract be placed in a trust for the children. No other part of the transcript, including the judge's oral pronouncement of March 18, 1987, was introduced. Rose likewise failed to introduce the June 1, 1987, decree at the February 25, 1988, hearing.

In *Finlay v. Jones,* 435 S.W.2d 136, 138 (Tex.1968), the Court wrote:

Whether the errors in the original judgment are judicial or clerical is obviously a question of law, and the trial court's finding or conclusion as to the nature of the errors is not binding on this court.

. . . .

But, errors in rendered and entered judgments are not clerical merely because they are based upon or grow out of clerical errors. *See Love v. State Bank & Trust Company,* 126 Tex. 591, 90 S.W.2d 819 (1936), in which an unintended judgment of dismissal was held to be judicial error in spite of the fact that the case was inadvertently and through mistake placed upon a list of cases to be dismissed for want of prosecution.

■ A judicial error is an error or mistake of the court *"in it's rendition, whereby an improper judgment is rendered but its entry is in accordance with [its] rendition...."* *Love v. State Bank and Trust Co. of San Antonio,* 90 S.W.2d at 821 (emphasis in original); *Escobar v. Escobar,* 711 S.W.2d 230, 231–232 (Tex.1986). A judicial error cannot be corrected after the "expiration of the time within which the trial court has plenary power ..." over the judgment, "except by bill of review for sufficient cause...." Tex.R.Civ.P. 329b(f).

In this case the trial court, on March 18, 1987, orally declared that "[he approved] the agreement between the parties as to the division of the *community estate and liabilities.*" (Emphasis ours). That oral pronouncement, however, does not amount to an oral rendition of the court's judgment approving the parties' agreement respecting their joint separate property, the 77–acre tract in question. Further, while it was clear that the parties had agreed to hold the separate property in trust for the benefit of their two children, the evidence is far from clear that the trial court was to create, by its decree, a trust for the children. Indeed, a reasonable interpretation of Turner's March 18th testimony is that some form of conveyance would be utilized to create an express trust in which Rose and Turner would serve as joint trustees for their two sons. The validity of that interpretation is reinforced by the decree [2] of June 1, 1987, by which Rose and Turner were to continue their separate ownership of the 77–acre tract as cotenants in order to enable them to create the trust for the children therein. Moreover, the original decree in respect to that joint ownership carefully provided each party's responsibility for taxes and the cost of fire or extended insurance coverage. Finally, the record reveals that Rose's motion to correct the 1987 decree was not filed until after Turner refused to place the property in trust as she had agreed to so do.

Based on our review of the record, including the March 18, 1987, and February 25, 1988, hearings, we conclude that the trial court did not, on March 18, 1987, orally pronounce or render judgment respecting disposition of the 77–acre tract. Even if, however, his oral statement could be construed as having approved the parties' agreement as to that tract, then the oral pronouncement meant that the court approved the *parties'* agreement to commit, by conveyance, the property to an express trust for the benefit of the children of the marriage. We therefore conclude from the evidence that the divorce decree signed by the trial judge on June 1, 1987, was free of either judicial or clerical error affecting the 77–acre tract. We sustain Turner's fifth point of error.[3]

The trial court's judgment nunc pro tunc signed on April 15, 1988, is vacated, and the divorce decree signed on June 1, 1987, is reinstated in every respect.

---

**2.** Approved as to form by counsel for both parties.

**3.** We express no opinion on Rose's first through fourth points of error.